Jeffrey Simpson, personally, Pro Se

1055 Park Avenue
New York, NY 10028

Delivered via email to all parties and Pro Se Intake: (ProSe@nysd.uscourts.gov)

Southern District of New York

Thurgood Marshall

United States Courthouse

40 Foley Square

New York, NY 10007

<u>**NOTICE OF REMOVAL**</u>

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF**

**NEW YORK:**

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, Jeffrey Simpson as

Defendant, hereby removes (**2nd Removal based upon new grounds, annotated below)** the

following case (the "Removed Case") from the Supreme Court of the State of New York, New York

County (the "State Court"), to the United States District Court for the Southern District of New

York:

> Jeffrey Simpson, as managing member of JJ Arch LLC and derivatively as managing member
> of Arch Real Estate Holdings LLC and JJ Arch LLC v. Jared Chassen, First Republic Bank,
> 608941 NJ Inc. Et Al.
>
> SDNY 1:25-CV-02372 (LTS), **Appeal 2nd Circuit (25-1087)**
>
> NYS Index No. 158055-2023, Active (Main Case)
>
> Caption does illustrate Simpson as Defendant but given the breadth of the case, it is
> structured that multiple parties are plaintiffs and defendants via claims and cross claims.

-------------------------------------------------------------------------------------------------------------

Related Case (subject to consolidation under separate cover):

 Jared Chassen, and 55 Manor LLC, individually, and derivatively on behalf of JJ Arch Nostrand LLC, JJ Haverhill LLC, JJ Tuscaloosa LLC, JJ Pebble Creek LLC, JJ Centre Pointe LLC, JJ Colombia LLC, JJ Midtown Oaks LLC, JJ Myrtle Point LLC, JJ 88 Arch LLC, JJ Cambridge LLC, JJ NCSC LLC, JJ Camelot LLC, and 5401 California Investors LLC  V.  Jeffrey Simpson and YJ Simco LLC.

> 1:25-CV-023273 (LTS), Active
>
> NYS Index No. 654928 / 2024, assigned Judge Joel Cohen

The Parties:

> 1.  JJ Arch ("JJ") is a real estate holding and operating company formed under the New York limited liability company law in November of 2017 and Amended in May of 2021.  JJ serves as the managing member of Arch Real Estate Holdings LLC (subject to temporary NYS Order, it is currently the Investor Member) and is the Managing Member of Class B member of Arch Property Holdings I ("ARPH I")*.

2. Arch Real Estate Holdings LLC ("AREH"), a real estate operating company,  was formed under the New York limited liability company law in December of 2017.   It acts as the operator of various affiliate companies for the purposes of managing investments in various real estate investment affiliated entities whereby it is the Non Member Manager.

3. JJ Arch Nostrand LLC, JJ Haverhill LLC, JJ Tuscaloosa LLC, JJ Pebble Creek LLC, JJ Centre Pointe LLC, JJ Colombia LLC, JJ Midtown Oaks LLC, JJ Myrtle Point LLC, JJ 88 Arch LLC, JJ Cambridge LLC, JJ NCSC LLC, JJ Camelot LLC, and 5401 California Investors LLC  - Investment Entities that are participating members in ARPH 1 whereby Simpson and Chassen both owned interests in but transferred their shares to YJ and 55, respectively in 2022.  Simpson is the sole managing member

of each of these, whereby they are affiliates of JJ Arch in connection with membership interests in

AREH controlled investment entities.

*ARPH 1 was established for JJ, Oak, and Key Personnel of AREH to invest in various real estate property.   The various entities are consolidated in the exhibit of the Agreement whereby Oak and JJ are members of each.

4.. Jeffrey Simpson (" Simpson")  a New York State Resident is JJ's Managing

Member and owns 100% of the interests in JJ, in addition to a participating investor

in ARPH 1.

5. YJ Simco LLC ("YJ") is a New York LLC and owns and operates real estate owned

by Simpson's family.   Simpson is the managing member.  This entity owns various

shares of JJ's affiliated investment entities since 2022.

6. Jared Chassen ("Chassen"), a New York State resident is JJ Arch's former non-

controlling member and a participating investor in ARPH I.  His resignation was

deemed effective on the event of the execution of the Joint Defense Agreement,

whereby he no longer worked on behalf of JJ Arch, as of August 4th , 2023.  (To be

further discussed herein)

7. 55 Manor LLC ("55") is a New York LLC and owns and operates real estate owned

by Chassen's family.   Chassen is the managing member.  This entity owns various

shares of JJ's affiliated investment entities.

8.. 608941 NJ, Inc. (a.k.a 35 Oak Holdings) is a corporation organized and existing

under the laws of the State of New Jersey with a principal place of business in

Toronto, Canada. Its principals are Kevin Wiener, William Weiner, and Michael

Wiener. It is the minority non-controlling member (during the 5 year exclusivity

period) of AREH and appointed temporary managing member of AREH under NYS

temporary order as of November 2023)  and participating Class A member of ARPH

I, and investor and guarantor in affiliate investment entities.

9. Great American insurance Company

**Defendant respectfully states as follows:**

1. The Removed NYS Case (158055-2023) was initiated in SDNY 1:23-cv-07089 and for the

reasons illustrated below Simpson had to initiate a NYS Case to effectively respond to the

actions taken by parties Chassen and Oak.    It was Removed to SDNY on March 19th, 2025 1:25-

cv-02372 and Remanded to State Court on May 2nd, 2025 on a technical matter of late payment (1

day).  1:25-CV-02373 and 1:25-CV-02375 are still subject to Federal Court, related cases and

subject to consolidation.   In addition, there is an active Bankruptcy Appeal at SDNY 1:24-cv-

08649, which addresses the same issues as 1:25-cv-02372.

GROUNDS FOR REMOVAL

2.   This action is removable pursuant to 28 U.S.C. §§ 1441(a) and 1331.

3.     Under 28 U.S.C. § 1441(a), "any civil action brought in a State Court of which the district

courts of the United States have original jurisdiction, may be removed by the defendant or the

defendants, to the district court of the United States for the district and division embracing the

place where such action is pending."  This complex corp matter started in SDNY and therefore

has grounds to remove it back there, notwithstanding the various other issues contained herein,

where there issues of extreme bad faith circumvention of due process, perjury, and fraud.

4.     Under 28 U.S.C. § 1441(a), "[t]he district courts shall have original jurisdiction of all civil

actions arising under the Constitution, laws, or treaties of the United States."  As discussed

below, the Removed Case asserts claims arising under the Constitution and laws of the United

States.

5.      This Court is the district court of the United States for the district and division embracing

the place where the Removed Case is pending.

6.      Under 28 U.S.C. § 1441(c), an entire civil action may be removed to federal

court if it includes any claims arising under the Constitution or laws of the United States.

7.      This case, therefore, necessarily arises under the Constitution and laws of the United

States.

**The removal**

*2ⁿᵈ Removal Causes of Action, MAY 9ᵀᴴ, 2025 UPDATE FROM PRIOR SUBMISSION*

*herein :*

1.  *In an effort to find Judicial efficiency, Mr. Simpson checked in with the clerk's*
    *office at both SDNY and SDNY BK to learn that the JJ Arch LLC Bankruptcy case*
    *was not "Dismissed" by a definitive Order.   On October 11ᵗʰ, 2024, a Notice of*
    *Opinion was issued with dismissal.   It references and caveats the "Remand*
    *Appeal" which is pending in front of Judge Vargas.   Since the Appeal was not*
    *disposed, the "Main" case was not Remanded to NYS Court.   Therefore the*
    *Removal and Remand process is circular and possibly moot for this case.*

2.  *In conjunction with NYS Court's Motion for Receiver, the technical Remand*
    *(subject to Appeal) caused Mr. Simpson to be attacked (again) in extreme*
    *measures that are harassment and include significant theft by a proposed*

*Receiver that asked for relief from this Court and did not receive such while the process is being officiated.   As a result, it has turned into a difficult charade of interactions of actions that are unlawful by the proposed Receiver. This includes entering property without authority or approval, changing locks, stealing trust funds from a corp. bank account and the like.   <u>As the attacks have built up, Mr. Simpson is now facing  action against him in NYS Court on Monday, 5/12/25 with an objective to Criminally punish and incarcerate him.</u> What is most notable is that the NYS Receiver Motion by Mr. Chassen started as an expansive relief request for JJ Arch but once the Motion practice started, it was allegedly narrowed for 4 properties (all subject to the Bankruptcy Appeal).   Mr. Simpson alerted the NYS Court of this and the overlap into other Actions and allegedly such relief was narrow in focus.   Effectively by May 7th, 2025, Receiver Order to Show Cause, the proposed Receiver and Counsel sought NYS Court to execute (and it did) where the expanded relief would overlap into the related case herein 1:25-CV-02373, without concern or acknowledgement that it is overstepping another case that is in the Federal Court, and related to the Bankruptcy Action for JJ Arch itself.*

3. *The Court is reminded that Mr. Chassen continues to commit perjury and collusive behavior with 35 Oak, all to avoid Discovery and the truth of the circumstance herein.   It is now self evident that a technical Remand is being used to seek ultimate relief (without prior NYS Order or briefing) in order to oust Mr. Simpson forever more where the proposed Receiver can be utilized to*

*overstep Mr. Simpson's AREH / JJ Arch Investment Entity consents which have not be sought and have resulted in fraudulent conveyance of property.   The urgent demand for incarceration and avoidance of the truth is for the opposition to put a final nail in Simpson's coffin to save themselves from fraud.*

4. *As a result of these actions, Simpson is once again left without counsel to defend himself and it even suggests "Criminal Incarceration" when no criminal justice or due process has occurred surrounding the parties that continue to attack Mr. Simpson.*

Jurisdiction and Venue

This dispute started in 2023, whereby the Oak and JJ parties could not agree on how to resolve the required capital contributions necessary for addressing the sharp incline in rising interest rates.   JJ as Managing Member was insistent upon following the contractual agreements and use best efforts to find the best possible outcome of a tough situation.  The Oak party acknowledged that the 5 year exclusive relationship expired and they wanted to rid themselves of any carried forward liability. Under 7.6.4 of the AREH Agreement, Oak had obligations to fulfill any loan guarantees that they took on.  They noticed JJ that they were unable to fulfill those capital obligations and since 3rd party investors also chose not to fund (they had the right, not the obligation where Oak did).   Dissolution was contemplated but Oak started to breach their contractual agreement by becoming actively involved in the business dealings without consent of the managing member (JJ, Jeffrey Simpson). They solicited the staff of AREH, spoke with lawyers, lenders, vendors and started down their own path.  They hated that they could not control the outcome of their destiny and they took matters into their own hands, and that had to be done through Chassen since Oak had no privity to the relationships required to effectuate the control that they desired.  By August 2023, things heated up

to the extreme where Oak made demands for Simpson to be ousted and Chassen to jump in. Simpson said no, Oak proceeded anyways without authority.

Initially, Oak sued Simpson in SDNY.   This was shortly after Simpson felt he had no choice other than to terminate Chassen (for Cause) for the swift and quick bad acts that started to form including larceny, solicitation, circumvention, etc.   Simpson found himself wiped out of the company by Chassen's doings which can be found in the original NYS case 158055-2023 pleadings. Shortly after these incidents, NYS Court provided minimal relief however still not honoring executed contracts.   Upon Preliminary Injunction against Chassen (without bond or appeal) for his actions, Oak became a Movant in the NYS case.   Oak and Chassen plead that they were not related until just last month where Chassen admits to his relationship with Oak in sworn testimony.  They have a Joint Defense Agreement that is specifically prohibited in the contractual agreements of AREH and JJ that was executed in  August of 2023.  The JDA has been requested for more than 18 months, formally and none.  The well known NYS "GFI Appeal" case dictates that JDA's are not to be withheld in litigation, even though Judge Joel Cohen agreed that is was applicable.  They spent millions to avoid disclosing this to any Court or Simpson.

As identified in Chassen's recent testimony, he has been working for Oak since August of 2023, prior to any litigation.  Oak kept the SDNY case open for many months after they gained a foothold in the NYS Court action against Simpson (after committing prohibited acts of collusion, circumvention, perjury, etc to get the control of the business that they sought).   Therefore, the grounds for Removal are proper under sections 1332 and 1442.

Notwithstanding the above, NYS has taken on Federal jurisdiction on a number of occasions in this very case.   In October of 2023, Oak sued Simpson in a separate NYS action to seek a Declaratory Judgement against him as managing member of AREH, pursuing a much needed Chapter 11 filing.

At the time counsel told Simpson, there was no other choice but he did not file.   Simpson removed this case to SDNY, and it was in front of Judge Carter.   He heard the testimony and encouraged the parties to find resolution but that was not possible since NYS Court decided to grant Oak their request for Order to stop Simpson from declaring the bankruptcy of AREH.  Oak immediately withdraws the case from Carter's Court because he was clear that filing a bankruptcy is a constitutional right.

Simpson had no choice other than to file JJ Arch LLC into bankruptcy on March 7th , 2023.  There was a misnomer that Chassen had the right to opine upon major decisions.  The original NYS Summons and Compliant illustrated that Chassen lost all contractual authority in May of 2021 on the signing of the JJ Arch Amendment.   Judge Joel Cohen mentioned in the first hearing in August of 2023 that he acknowledged that Chassen had virtually no rights to consent within JJ Arch since the 4th anniversary of the signing of the agreement (2017 to 2021).   Although it was improperly portrayed to the Bankruptcy Court as if this contract does not apply.   In the NYS Evidentiary hearing last month, JJ's and AREH's Corporate Counsel confirmed that Chassen had no rights as of 2021.    NYS Judge says he does not care.   There is specific case law, MAK Tech. Holdings Inc. Anyvision Interactive Tech LTD 2024 NY Slip Op 03376 decided on June 20th, 2024, NYS Court of Appeals.  This decision clearly shows that NYS cannot alter contracts and that this issue of differentiating between a contract amendment and an amended and restated agreement have a clear difference.  The language mirrors that of what is in JJ's Amendment.   Therefore Chassen's consent right concluded in November of 2021, However, NYS granted him certain non contractual abilities.  The current SDNY Bankruptcy Appeal, in front of Judge Vargas considers this very issue of corporate governance.

 During the JJ bankruptcy  Motions were made by Chassen and Oak and discovery was granted, they withdrew the motions to avoid discovery.   Specifically ,Chassen  made a Motion to the Bankrutpcy

Court that he could not work and support his family because if he did, he will be deemed resigned from JJ. When Chassen gave his testimony on 2/25/25, it was clear that his resignation was effective since August of 2023 because he worked for Oak in contravention of the JJ Agreement. NYS Court says that they do not care. This is not a question of appeal, this is a question of the rights of a State to attempt to tell a business how to operate by changing their agreement as Judge Joel Cohen has. The well known "Lochner" case deals with these issues and has many permutations since but its roots are still on a good ground. NYS Court has breached Simpson's 14th Amendment rights to own property and to prosper as a business person. The NYS Court has intervened, when it is not permissible under the constitution.

Further on jurisdiction, the Investment Entities case was filed during the midst of the JJ Bankruptcy. This case identified the parties that were on JJ's SOFA schedules. State Court gave an immediate TRO and then the Bankruptcy Court gave that merit because they likely will assume that the other areas of government are doing their diligence but this has not been the case.

In the JJ Bankruptcy dismissal, the outstanding appeal under Judge Vargas is still open and it deals with these very issues surrounding corporate control. This new information obviously changes the circumstances but maybe equally important is that Simpson has raised the question to SDNY and NYS Court since Dec of 2024, is there a "stay" pending appeal? It appears that this very unique appeal has tentacles that go past the bankruptcy dismissal and under Fed Banc. 8007 and 8009, it appears that until this appeal is disposed, the lower court should not be litigating this very matter but it is to the extreme levels.

**Due Process and the Rights to Counsel**

Simpson has been attacked constantly by the NYS Court, Chassen, and Oak since the JJ dismissal. None of the issues noted herein have been considered by the NYS Court. The Opinion of Judge

Mastando on Oct 11th, 2024 has a carveout for the very appeal that is pending.  Prior to the chapter filing, Simpson had an Evidentiary hearing that was scheduled to deal with Chassen's malfeasance (but was full of tactical delays) but after the JJ dismissal, Simpson's motions were considered moot without legal authority by the Court.  The NYS judge has prejudiced Simpson including no regard of the pending appeal or other Federal Actions.   Even upon notice of this removal, NYS Court continues to intervene.

Simpson has complained to the CJC, Administrative Judges of NYS, no help was provided in connection with concerns of prejudice and bias.   Granted Judge's bias is not grounds for Removal, the results of it are.

Chassen (without merit) has attacked Simpson on Criminal Allegations.   Simpson has been wiped out economically as a result of this litigation and cannot fund more legal bills.  The NYS Court demanded Simpson come to the hearing without a requested Continuance or counsel, late last year.

Simpson has legal defense insurance coverage through GAIC but those awarded policy proceeds were shut down on him where Oak (non party to the insurance) sued them and Chassen (who admitted in testimony payment of legal fees by oak) again to limit Simpson's right to counsel via the policy.  The attorneys disband on lack of funding for Simpson due to GAIC's conduct.   Simpson attempted to bring GAIC to the NYS Court to compel them to reconvene funding.  GAIC confirmed to the Court that they will provide $250,000 for legal funding for Simpson, Judge Joel Cohen told them that they are not required to do so.  It is unconscionable.  The Insurance case is removed to the Federal Court for this reason.   The NYS law on insurance covers these issues but they are ignored.  Simpson has indemnification coverage under the various agreements, NYS Court refuses to support enforcement even though there is language in both DE and NYS governing documents

that require this protection for him.   Again, the bias is sort of unreal and unearthing.   GAIC is harming Simpson's rights to defend himself by playing this game and avoiding its contractual and lawful obligations.

**Stay pending Bankruptcy**

YJ, where Simpson houses family assets certain JJ and AREH assets filed a bankruptcy, that should "stay" the NYS proceedings as YJ is a named defendant.  As a result Oak and Chassen remove YJ as a defendant   YJ has other financial creditors outside of this case but certainly as a result of this case but NYS Court has ruled that the "stay" doesn't apply when it houses certain assets of the estate (the JJ Investment Entities).

There is also an argument that the insurance proceeds have reach to Simpson via YJ as well, so that is also grounds for this removal.

The third Removed and related NYS action with regards to the JJ investment entities have separate litigation in NYS Court that was filed by Chassen during the JJ bankruptcy and there was "Stay".  Also related, in 2022 Simpson transferred his various JJ Investment entity shares to YJ, as permitted by the documents.  Chassen did the same with his, for family planning purposes .   Of course the YJ chapter filing "stays" this action but NYS Court doesn't recognize this either.

The NYS Court has attempted to appoint a Receiver in control of direct JJ investment entities where only Simpson and Chassen (purported to be) are partners and guarantors.  In the various remedies within the JJ Agreement, Chassen's acts support his removal as a member.   Chassen's testimony acknowledged his resignation, and other acts that are in contravention with the executed Agreement.   Simpson challenged NYS Court on Chassen's "standing" for Motion practice, given that he is no longer a member since August of 2023.

Chassen also initiated a Lis Pendis proceeding over JJ investment assets on October 10th, 2024, prior to the bankruptcy dismissal, this too was a breach of the "stay".

Simpson has been attacked via his Civil rights for over 6 months now, the parties made it impossible for him to work, causing him extreme stress, defamation of character and wiping out his assets by these extreme litigation tactics that work in the State Court apparently.   Justice must be served and an end to these acts must stop.

**The History:**

1. The inception of ARCH and JJ Arch

2. In 2017, Simpson decided to leave his prior role as CEO of Greystone Development on good terms, whereby he signed an exhaustive transition agreement that provided, amongst other things, compensation to AREH for support services for 6 months (Oak and Chassen told this Court in Affidavits that I was "kicked out").   It also provided authority for him to bring Chassen, Miller, and Last to AREH without any breach of my prior employment agreement. Frank Van Biesen (Oak CFO reviewed and commented on the transition agreement before I executed with Greystone and Oak  has an indemnity in AREH  for any risk, non which occurred).

3. November 2017, Arch and JJ Arch are executed.  5 year exclusivity in place with Oak, similarly 4 year structure with Chassen and me.  David Heymann of Meltzer Lipper was the attorney.   Arch (AREH) was explicitly the Non Member Manager (with a list of exhibits on how property will be acquired, most notably C org structure and D form property agreement).

   Note:  Since inception, Meltzer Lippe was the dedicated "in house counsel" virtually involved in all "upper tier" transactions for consistency.

4. Since inception, **First Republic Bank (now JPM) was the sole bank for AREH**, JJ, and affiliates.  FRB was a long term relationship of mine.   Both Chassen and I kept our personal banking there too and gave access to our controller, Yechiel Lehrfield to draw funds when required to lend to the business with maximum flexibility, built on long term trust.

5. 2018, Jason Paul (a long term relationship of Simpson) is introduced in the mix (with Oak's consent) to head up property management and what is ultimately called Arch Property Management (aka Ore Living).  His agreement is contractual and not employment based but it had similar protections to the others, also facilitated by David Heymann of Meltzer Lippe.

6. Oak asks AREH to take control of 2501 Biscayne Blvd in Florida, the site which was across the street of 2500 Biscayne Blvd, where Simpson developed a 156 unit, 22 story apartment building.

   *Note: as a startup, we needed help with resources – Paul brought in his brother in law, Computero, the IT company for AREH and JJ from 2018 until 2023.  Chassen and Paul used this relationship to oust me in Aug 2023 by wiping me out of all systems inappropriately.  Computero admitted to this Court that they did so on Chassen's direction in Aug 2023 as well.  As a result of my internal investigation, Paul also admitted in Aug / Sept 2023 to participating in the ousting of me.  His excuse was that he nervous that I was going to pursue his termination, given the various complaints that were made whereby he was intoxicated in the office many afternoons.*

7.  2020, Arch Property Holdings 1 LLC is executed as I committed to providing the ability to invest and share profits to key individuals.  This restructure included amending all of the property level ownership agreements, (Arch_MM LLC and corresponding JJ_LLC per property) to move all cash flow from AREH to ARPH 1, all documents on the docket.  This Agreement further cements JJ (with no removal rights and I am the only ultimate authorized signer and MM of those entities).  It says that ***all distributions and cash flow require the Class B Member to facilitate.***  It also says that the Class B Member is the only party (JJ)

that can facilitate D&O insurance.   It is a DE entity, governed by DE law (not NY).   This

agreement and structure was presented (there are legal Opinions) for every lender for every

transaction.   It was not public as it is not appropriate to share key Personnel compensation.

Every property transaction required authority from Class A (Oak) and Class B (JJ as MM) to

proceed on acquisition and disposition.   All restructures and dispositions by Oak, via This

Court's Nov 2024 Order intentionally skips my consent right.   That Order did not provide any

relief in the context of those entities.   That is why Chassen is seeking a Receiver!   Oak even

solicited these consents "non pro tunc" in settlement discussions.   You can say settlement

discussions are inadmissible but that rule does not apply when malicious and unlawful

events are sought.


*Note: The Nov 2023 NYS Court Order does not circumvent these DE property entities and surpass my*

*corp (not persona) consent right required to transact so that makes all RE transactions conducted*

*moot and / or fraudulent conveyances, hence my earlier note about "unclean hands"*

8.  In  2020, Oak sells their Lighting business (Viscor) to Leviton for an undisclosed amount.

    This was concerning to me and my team as their $10 to $15M of EBITDA, which was utilized

    for AREH property loan guarantee covenants, could have just eroded.

    *Note: It is unquestionable that I only solicited a partner, Oak, for 2 purposes – loan guarantees and*

    *seed equity, with a cap on time (5 yr exclusivity).   My intentions were clear in the 2017 term sheet and*

    *AREH agreement.  They did not have experience and they were not involved in the day to day.   They*

    *received virtually 50% of all  profits for this obligation.*

9.  May 2021, JJ Arch was amended (not "restated") to strip Chassen of any consent rights of

    any kind, on purpose because Simpson was concerned about his actions and judgement

    but I was considerate about his compensation and offered him an increase from 46%

    interests to 49%.  David Heymann of Meltzer Lippe was the attorney, where both parties,

ARPH 1 was established for JJ, Oak, and Key Personnel of AREH to invest in various real estate property.   The various entities are consolidated in the exhibit of the Agreement whereby Oak and JJ are members of each.

10. The docket does not reflect that AREH was an unofficial "helping hand" for Oak in their US real estate holdings, outside of AREH, where they did not have one employee.  Substantial resources were utilized over the years and especially during Covid, there were not charge backs or reimbursements sought.

11. As exclusivity was expiring, the Members (Oak and JJ Arch) met several times (over many months) on the possibilities about continuing forward, it was decided not to proceed, mutually.   This was in 2022, right after AREH hit $1Bn of property (the 2017 term sheet for AREH projected $300 M).   It was also after the AREH sale of 2,000 apartments in the southeast, which resulted in a $60M profit in less than 3 years.   Simpson shared 75% of the JJ apportioned earnings with Chassen, Miller , Last, Paul and others staff members.

   *Note: Since Chassen and I had a sizeable capital gain, our accountant suggested that we should acquire assets where we were the majority to enact tax benefits (or deferral).  Hence, the JJ Investment properties.  David Heymann advised that no new agreement was needed and JJ provided for it in the existing Amended Agreement.  I had concerns, given that I was providing personal guarantees and I only wanted to proceed as the sole MM (and final decision maker).  Heymann showed me how the JJ agreement protected for this.  As an example, JJ is not built for Chassen to ever fire or remove me as the only Member that can commence a Capital Call is me, contractually.  I was worth much more than Chassen, more assets, experience, etc.*

12. Melrose (Haverhill in WPB Florida) was acquired in 2022, I did not want Oak to participate as it would survive post exclusivity.   Chassen pushed me, aggressively, to include Oak.   **This property was just sold for net "0" to investors and Oak circumvented the ROFO (in addition to the required property consent)  that exists in 7.9 of AREH, where I could**

**have saved that asset.  Notably, the lender pre-approved me to be the sole guarantor. This lender sent a note in 2023 suggesting that the Court Order and activity by Chassen and Oak was a full "call" on the loan and a Recourse event for unauthorized change in control.  Several other lenders also sent these notices, they are correct.**

13. **Year End 2022, Simpson worked with the team to develop a potential cash flow projection (requirement) given accelerated interest rate growth.  Given Oak was on the loan guarantees, he felt obliged to look far ahead of potential risks and to alert them of such.  The forecast was approx.. $20M of cash needs for 2023.**

14. Early 2023, Oak told Chassen and Simpson that it had cash issues on multiple occasions. After capital call projections came out, they alerted their concerns if they could not make potential funding obligations via Van Biesen.   The other AREH property investors (over $100M) would not provide capital call funding in the midst of unprecedented interest rate hikes, they had no obligation to do so and they were "crammed down" diluted as a result. Oak had the obligation under 7.6.4 of the AREH agreement in return for sharing half of the profits.

15. AREH team starts exploring new capital sources (Oak suggested to do so).   A Dissolution broker was engaged (**Dissolution is not reversible per AREH since both parties consented**).  In Chassen's desperation, he commenced heavy duty dialogue with Nir Meir (former HFZ executive that is currently incarcerated for fraud), against my judgement and suggestions, as an example.

16. Simultaneously, during the first half of 2023, the team and I  worked diligently with David Scharf of Morrison Cohen to explore with  every lender to see if I could mitigate the Oak potential gaurantor situation by putting myself as the guarantor to eliminate Oak's anxiety in capital needs and loan guarantee exposure.   We also started to invite Oak into the dialogue.

This caused serious frustration and issues for all parties (their lack of knowledge and experience was self evident and no one has time to teach in the midst of a crisis that was building quickly) and then the Wiener list of defaults started to arise because Michael felt that he could just jump in and speak with or undermine anyone or anything and it was a disaster.

**Note: Chassen and Michael Wiener became close friends, but it was larger than a business relationship when they started traveling to South American countries and probably doing things that I could only imagine.**

17. May 2023, after countless efforts to find capital, the first asset goes back to the lender, Brown in Philadelphia.  I was successful (with Miller) to negotiate with the lender a structure that would save the equity in the property potentially and only $1M investment was required (it was a $100M asset) and Oak said "no".   Even though it was their obligation, it got very contentious.

18. First Republic Bank goes bust overnight in May of 2023 causing serious issues for AREH to operate given the quantity of bank accounts and the portal that was used to move funds around.  Shortly thereafter all of Simpson's long term relationships leave the Bank except for Christy Santoro (she knew Simpson since 2017).

19. During the first half of 2023, I as the leader of AREH, saw budgetary issues and had to react with tough cost cutting measures that were not something I was proud of but I had no choice.   One of the many budgetary issues was that Chassen was receiving $600,000 annually (he purports this in his bond pleading in Oct of 2023).  I had to evaluate exactly what each person was doing and how their cost could be justified.   Additionally, I was the only one that was financially sound enough to make it through the storm as I built my personal balance sheet over many years and I was very conservative.   Chassen went from

living in a tiny apartment to huge 2.5M house in Westchester in no time, he buys two $100k

vehicles, and buys another big house in the Hamptons with his family.   The pressure on him

to sustain was huge, I was able to make decisions that were not about my pocketbook

because I had liquidity and net worth outside of AREH on purpose.

20. Kevin Wiener (Michael's brother) joins the dialogue by June of 2023.   It is unclear of his

agenda but it was not positive, friendly or inspiring.   Chassen informed me that Michael

Wiener got a mandate from his family to stand down because so much of their capital was

eroded and Kevin will step in (Michael invested the proceeds of Viscor above in other

businesses that failed).   Kevin starts to write messages that were not constructive including

false promises to start "papering" the file but nothing had merit, it was all optical illusions

and it really frustrated me.

21. July 2023 – evidence shows (without discovery required) that Oak and Chassen were in

pursuit of their collusive plan, notwithstanding Chassen stealing from me personally (over

$600,000 initially, $500,000 for his benefit of the Line of Credit that he could not pay off) and

from JJ.  This dovetails into the August 1st, 2023 Contract that Schwartz tried to tell this

Court is in full force and effect but it was predicated a new JJ Line of Credit loan closing from

Connect One bank, explicitly, and Chassen could not qualify and tried to commit bank fraud

and tried to push me to participate and I refused (which hurt me the $1M I distributed at a

tough time).   This was discussed on the record over a year ago.

22. July 7, 2023 – secret meeting with Infinity (Chassen's cousin that was a partner in two AREH

properties), Oak, Chassen, and Miller (former junior partner / employee with explicit

obligations to JJ and its principals in her various agreements) where she later admits that

she handed out confidential information and Simpson was explicitly avoided on purpose.

23. Given the potential litigation threat, JJ hires (on my suggestion, not Chassen) a non conflicted corporate counsel (Len Breslow of Breslow and Walker) to review the documents and they told me to rest assured that I had nothing to worry about as I was the only one in control and provided the solutions I noted above.   He also advised me that there were only 3 options:

   a.  Find a new money partner

   b.  Dissolution

   c.  Bankruptcy

24. Oak vaguely mentioned they hired consultants and insists on "collaboration"  but it was already clear that they didn't know how to do this in a controlled manner based on feedback from lenders, partners, vendors, and employees.

25. July 19th, 2023 memo (the blueprint of what has occurred, in concept) was sent in  e mail from Oak to Simpson and Chassen per the above.  I demanded that Chassen notify them that he could not proceed with their solicitation (prohibited in the agreement), he refused. This was not the first act of insubordination and I notified him of this in writing.   Of course this kind of thing is part of "Cause" in the JJ and AREH agreement on both parties.  Section 7 prohibits Oak from doing anything contrary to the Managing Member and they did exactly that.

26. Over the next two weeks, countless threats and improprieties, Chassen lies to me and positions himself to officially work with Oak on the hostile takeover.  During this time, Chassen solicited me to commit bank fraud for a $1M line of credit that he was going to benefit from.   I refused and this is illustrated in the Court documents.

27. Chassen starts to be the Oak mouthpiece, he tells me that I can go the easy way or the hard way. Oak had decided that they wanted to reshuffle capital stacks (including other investors) and I refused to do anything of the sort as Managing Member without prior consent of the investors.

28. August 1st, 2023 – I signed the "Contract" with Chassen for the JJ property transfers predicated by the CNOB loan that never closes because of Chassen inability to comply with the requirements of liquidity. I later find out that Chassen lied to me and told several people that he needs to quickly execute this contract "before he sours the relationship"

29. August 4th, 2023- Chassen signs a joint defense agreement ("JDA") with Oak and Infinity. He also asked FRB to remove me off all my banking accounts, they did immediately (including my personal accounts), I was not made aware until I spent hours in a bank branch on Monday, August 7th, 2023.

30. Chassen sent a text message to Miller saying "I am going adverse to Jeff today", she provided this to me  She also told me that he asked her to communicatee to me that he was out sick but he actually was not.

31. August 5th, 2023 – I sent a notice of termination (defined as Resignation) to Chassen for "Cause." I followed by advising FRB (sole business bank) and Computero, our IT consultant, neither responded to me. I had every right to do this in the Contract, no Court intervention was required.

32. August 6th, 2023 – I attempted to contact my key staff members and all ignored me, except for Tristan Last, who is the only one that kept her integrity.

   a. Chassen sends an improper notice of termination to Simpson. There is no world in which I fire someone and then they can attempt to fire their own boss afterwards.

b.  Oak sends a removal letter of JJ *within 1 hour"), in addition, suggesting Cause
events (which if they wanted to do that, there was a contractual process with Notice
and Cure).  And how can they purport to remove JJ if they wanted to keep Chassen
around to check boxes for lenders.

33. August 7th, I sent a legal notice to the parties demanding that they course correct from their
illegal and improper behavior, which included theft, collusion, etc, they refused to comply.

a.  I was locked out of my office (Chassen asked Paul to do this), electronic systems
and bank accounts (including my personal ones).

b.  Chassen and Oak directed the office staff to work from home to avoid me as I was a
threat.  That week they also communicated with each other about how to "build a
case against him", they solicited my staff to write fictitious letters about me in trade
for indemnification and Chassen made improper money transfers, a few examples.

c.  I went to FRB that day and they didn't have any record of me whatsoever as if I didn't
have a single bank account.  They eventually froze the accounts on my demand to
stop whatever was happening temporarily.  The banking access with JPM is still an
issue over a year later.  The bank did bad acts and they should be penalized for it.

34.  August 10th, 2023, Oak filed a complaint in SDNY against me personally to support the
August 6th improper removal above.  It seems that it was never pursued but was left active
until March of 2024, without any Motions, Notices of Hearings that I am aware of while this
very State Court action was running concurrently .

They funded Chassen's litigation (not permitted in the agreements) and joined the NYS
Action as a Movant when he lost (Nov 2023) but didn't withdraw or dismiss the SDNY case.
Discovery surrounding this relationship has been avoided for the entire time but the Courts

allowing their motion practice and withdrawals when necessary to avoid it.   They were also

suing me in two Court venues at the same time for the same issues besides losing their right

to pursue me when they dismissed an action against me but then only started a new one on

the same grounds.

I also met with Chassen (prior to litigation) hoping a resolution could be found.   He told me

he gave everything Arch related to Oak and they were giving him a $200,000 salary and

paying his legal.   He sent a text message later that day that illustrated the work that him and

Oak were doing together and more hostile threats that soon they would "start acting like

animals" against me

35. August 14th, 2023, I filed an Ex Parte Emergency Action TRO request in NYS Court (given

jurisdictional requirements within the documents, Counsel suggested that this was the

right path), against Chassen and FRB solely to simply get AREH and JJ control back as a first

step.   The case gets assigned to Judge Joel Cohen in the Commercial division.   After a week

of harsh controversy, I ultimately get a favorable TRO but Cohen also allows Chassen to be

reinstated to maintain status quo until the PI hearing.

   a. Even though Judge Cohen said on the first hearing that Chassen did "***extra illegal***"

   activities and  *he read the JJ Operating Agreement Amendment 1 (from Nov 2021)*

   *that Chassen had virtually no rights since 2021*, he was giving him consideration

   after what he did.   This was concerning in the early stages of the litigation.   It was

   not considered later by the Courts that Cohen confirmed that Chassen had virtually

   no rights.   That would have precluded him from further actions as he was fired

   properly and officially and for good reason due to criminal activity.

b.  There was a negotiation of what this initial Order should be *and Judge Cohen suggested rewriting the operating agreement*.  I pushed back and said *that it would require an immediate bankruptcy because the individual investment property loan documents don't allow for unconsented and instant change of control*.  The proposed order that they provided looked like a mirror image of the July 19th, 2023 memo.  Cohen ultimately denied these requests and signs a TRO on August 22nd, 2023, mostly in my favor.  Fried Frank (representing Chassen), lied to the Court that they were not working for Oak and that Chassen had management authority that he did not have contractually (evidence shows that they knew to the contrary).  Fried Frank was also pursuing a foreclosure against AREH's Brown property in Philadelphia at the same time for a lender.  They were also hired by me at AREH, not that long prior, which means there was a representation conflict of interest that was required attention.  No one cared of this attorney conflict.

c.  Cohen acknowledged that Chassen stole from me but diminished the amount as if it was insignificant.  The amount is above the $75,000 federal jurisdictional requirement.

d.  The IT vendor admits that he stole my intellectual property and sends a legal letter via an attorney and points to Chassen.

e.  FRB / JPM is not helpful, they provide limited bank access and Cohen is apologetic for their involvement

36. August 23rd, 2023, I return back to work, try to get things back on track.  Oak pretends that they didn't have anything to do with Chassen's maneuvers and they demand that I quickly sign a PSA to sell their 2501 Biscyane property.   I conducted a proper corporate investigation of Paul and Miller (with witnesses and legal counsel guidance) to see what

happened and I learned more bad acts, further articulated in my 2nd notice of termination of Chassen on August 30th, 2023:

    a. Chassen and Oak colluded heavily, they solicited staff to "build a case against me" and solicited staff letters to destroy my character. They also worked collusively together on all of the actions that Chassen conducted. Several junior partners / employees admitted that they assisted in the efforts improperly, such as Michelle Miller and Jason Paul.

    b. Learning these facts had me question Oak about their involvement and they refused to share. I was also entitled to documentation of all that happened during this time by the Court Order. They still refuse to share certain key documents like their full "joint defense agreement" and the indemnitees that they executed with Chassen and others.

    c. Chassen spends this time in the office (Court granted) simply to advance his case by further solicitations and using his access to information to feed it to Oak or simply upload it to NYSCEF for his case.

37. August 30th, 2023, I sent Chassen a JJ Arch Defaulted Member Loan which was also a Default Loan under the JJ Agreement since he was out of balance in the Capital accounts by $1,200,000 and if he were to take distributions during this time (he always needed my permission anyways) he was going to lose his Membership interests that were pledged to me and subject to immediate foreclosure, per the agreement. This occurred, he refuses to acknowledge. Cohen doesn't seem to give this the contractual merit it deserves.

38. September 29th, 2023, successful Preliminary Injunction against Chassen. After he pleads for a bond (he makes contrary statements to the latest "new" Complaint) and admits that he committed the acts that he did for justifiable reasons, he does not receive relief as it is

prohibited under 7.5 (B) of JJ Arch.   He does not appeal this decision either.   During the preceding weeks Chassen complained to the Court that I could not fire him again, even though my Cause letter was proper, he sought contempt of Court of me.

   a.  My attorney at the time, Adam Leitman Bailey, was threatened by JPM that if he represented me further, it was an ethical violation of conflicts.   He dismisses me by sending a huge bill and then sues me for it and gets a AAA award against me, which I object.

39.  JPM continues to be difficult on banking access so much that it made clearing payroll almost impossible, even though the funds were available.   Cohen thanked the bank for their patience and felt bad for them rather than enforcing them to follow the operating agreement or questioning why they did the acts of August 4th, 2023 above.


40.  October and November 2023 – Oak joins the litigation as the Movant (the SDNY case is still in existence but no activity).   They aggressively chastise me every way they can to convince the Judge that they did in fact help Chassen and that it was all proper and I was a bad actor and manager.   The theme of mismanagement becomes the highlight but it does not consider that funds are required to manage.  They reissued their notice of removal of JJ for Cause and Judge Cohen allows them to proceed.   He shows his favorable bias toward them by suggesting that I could defend myself for these Cause allegations but that never happened as they kept sending in TRO's and Cohen made up his mind without any support other than papers and Affidavits (contain perjury about me).

41.  During this period, Chassen is still working in affiliation with AREH even though that is not possible given that he was only affiliated with me at JJ.

42. Before Oak gets temporary control of AREH, by Cohen on November 2nd 2023, they filed a separate action in NYS Court asking for a Declaratory Judgement to preclude a chapter filing of AREH into bankruptcy . Restructuring Counsel appeared in NYS Court (on my request) to say that this is not a State issue, it is a Constitutional issue, Judge Cohen shuts him down.

43. Restructuring counsel removes this individual case to SDNY.  Judge Carter was assigned to the case (emergency relief) and he was asked for a TRO.  He granted it following up with an immediate conference call on October 27th, 2023.  Once he heard arguments for 1 hour about why I should be stripped of a Constitutional right, he suggested that the parties meet and confer and try to come to a global resolution.  He asked all parties if they will verbally accept this process for 1 week and all said yes.  He concluded that if the parties did not reach settlement, he will likely release the TRO because he didn't see how it was lawful to hold back any chapter filings and of course he cannot comment on if those filings will or will not have merit but that is not the point in question, all contained in the transcript of the conference.

44. Simultaneous to the above, Oak was still pursuing TRO relief in the main NYS case from Judge Cohen. Judge Cohen granted them a TRO which precluded me from filing AREH in a footnote.  They also forcefully tried to install a Receiver.   Cohen didn't accept it but those attempts were a trigger in the loan documents in addition to their initial Change of Control, full recourse events.  Several lenders even sent letters of default stating this.  Cohen did not acknowledge.

45. Oak then withdraws the SDNY Declaratory Relief on bankruptcy Motion and does not fulfill the obligations that they made to Judge Carter, since they had a better outcome with Judge Cohen ruling on a federal / constitutional matter improperly and without jurisdictional authority. .

46. Several hearings occur in November where Oak convinced Judge Cohen to oust me and give them control of the company. Not only did he do that, he provides Chassen with an additional right of consent for JJ that only I had as managing member. He said it shouldn't be a proxy but it was. This was the key factor for Oak to start fulfilling its mission in transferring properties to lenders in trade for guarantee relief, circumventing me and over $100M of other investors.

47. By December they shut down the AREH office, turned off my e mail, took away my health insurance too.

48. As part of the "change in control" I was owed significant payments for my service to the company in my daily dedicated work, they refused to pay even though Judge Cohen's Order said that they had to fulfill the obligations of the agreement and were fiduciary responsible to all, including me. I also sought contractual indemnification to Oak for legal expenses, they refused even though there is an "advance" clause.

49. I made a claim to the insurance carrier in November and starting receiving legal assistance in December. I had already spent $300,000 in legal that was not reimbursable by the policy as it was "pre claim / pre tender" expense.

50. The conflict in State Court continues, Judge Cohen is seemingly unwilling to listen to any evidence or arguments that he jumped the gun on his rapid fire TRO's. He was not understanding that until the change in control, I was working 16 hours a day trying to keep AREH alive without any investor or lender funding. I simply wiped my family's liquidity in hopes that I would save the company.

51. Now that I had defense funding (through insurance), I hoped to get legal counsel to defend this so that I could move on and try and make a living to support my family. The controversy had most law firms scratching their head saying "how could this happen"? I had at least 10

different lawyers and others call Oak to try to find a way to settle this and they refused.

Even investors called and offered to visit them in Toronto with me, and we were told "no".

52. Multiple lawyers convinced me that Cohen's rulings made no sense and they were going to

show him why property conveyances were happening concurrently and inappropriately via

Oak with Chassen's consent proxy, disregarding my consent rights.   Judge Cohen did not

recognize the concern, he focused on "motion practice" and told us to appeal.

53. By February, 2024, we requested an appeal to NYS AD1, asking for CPLR 5519 and 5518.

They denied 5519, but said that the group of Judges would review the control and

conveyance issues. I asked Oak to hold back moving property while the appeal was pending

and they refused.   They fraudulently conveyed (without my consent, even though I notified

them and the lenders of this) almost $200M of property already.  Chassen also puts me on

notice that JJ liabilities outweigh its assets, referring to claims by Oak.

54. March 7th, 2024, JJ files bankruptcy (no reply from AD1 prior) in hopes that the Court will see

that control is contractual and most importantly, the properties needs relief.   Oak claims

that JJ doesn't own anything, that is refuted by me because it is factually incorrect.

55. The bankruptcy papers show it all but Oak and Chassen refused discovery 4 times (in that

forum).   They make motions and then withdraw them since discovery was granted.   Judge

Mastando was not willing to look at what Judge Cohen did as it relates to control and

although the NYS main case and all other cases were moved and stayed, he ordered

remand citing that he must rely on Judge Cohen's Orders as a precursor.   We sought an

appeal on June 24th, 2024 (08649 JAV).

56. My ability to perform JJ's bankruptcy was extremely weak.   I was still struggling with bank

account issues via JPM, I lost my income and staff (including data required for reporting

since Oak has control of the systems), and then Oak uses its control of AREH to sue GAIC

for providing insurance coverage to JJ allegedly improperly.   GAIC stopped funding multiple lawyers on my behalf and for JJ (even though they committed to and signed their retention applications) and proceeded with an Interpleader action in NYS Court by May of 2024, per #2 Active Litigation above.   I detrimentally relied on their funding to have an expensive and complicated Chapter filing that they officially endorsed in writing. The JJ Archs law firms immediately disband from me and say it is "attorney client relationship deterioration", upon notice of payment concerns.   Also, Chassen made a demand for insurance coverage in April of 2024 (6 months later) and the carrier has their concerns there too but it was convenient for that to happen simultaneously with AREH (via Oak) suing the carrier.

57. I lost several months trying to find replacement counsel and I was also stretched for liquidity.  When I did ultimately retain counsel, Davidoff Hutcher and Citron, they did an amazing job of illustrating the issues but too much time had passed and I clearly lost credibility with the Judge.   By October, 2024 the bankruptcy is dismissed with a 50 page opinion that suggests potentially bad faith filing but it leaves an opening for relief as the control issue is still in Appeals with the Magistrate SDNY Court..

58. Chassen seeks relief from This Court, amidst corp Chapter filing proceeding and it grants relief on assets that are scheduled per the JJ Arch.   How can this happen?

59. DHC walks away from me upon the dismissal, in concern of lack of future funding.  Now I am left with no lawyer and no funding for a lawyer.  Everything I own is in distress because I haven't earned an income in almost 2 years.  I begged GAIC to assist and they said "possibly".

60. On Feb 19, 2025, I learned that Chassen filed Lis Pendens on 2 of the 4 JJ Arch properties, in NYS Court, on Oct. 10th, 2024.  The Chapter filing was dismissed on Oct. 11, 2024.

61. Chassen and Oak try to attack me in NYS Court immediately (Oct and Nov 2024), they ask for Criminal contempt against me for a bad faith filing, they seek having me incarcerated.

62. I did not have Counsel and the new harassing pleadings against me are beyond overwhelming.   My health has deteriorated.   I asked the Court for continuance for sourcing Counsel,  I was told "no" except for criminal allegations (which were brought up in the proceedings and Your Honor did not stop them).   This was surprising to me and others. Now I was a Pro Se litigant, I am not a lawyer but familiar with my business and the documents.  There are constant actions being made and I have no way to defend to stop this chaos.

63. I ended up going to NY State Court 3 times from October until December, each time I pleaded with Judge Cohen to please read and refer to the documents and prior hearings. I totally understand that Judge Cohen has a full case load. Unfortunately, there have been times when decisions or statements in the past were misstated in more recent hearings. Examples that can be found in the court transcripts of October 23rd and 30th.   He made many misstatements as follows (in transcripts):

    a. "You filed a bankruptcy, you don't get a trial"

    b. "I never provided Simpson with any relief," but he did and I reminded him and he then acknowledged.

    c. I was able to correct the record on a handful of items where I pointed to Judge Cohen what he said in prior transcripts but then made contrary rulings.  The transcripts do record me correcting him.  ~~And~~ If you go by his initial review of the documents and how he read them, none of this could have happened contractually. He is not willing to acknowledge that he made serious mistakes and will not reconsider.

d. Most notably I shared that his "change in control" caused horrific damage to the business and property and to me personally as it was not permissible in the contracts.

e. November 7th, 2024, I submitted an ex parte emergency relief request. It took 3 weeks to get a hearing after pleading extensively for one. Although all that I sought was justified, he said no on all fronts. I reminded him again that his change in control didn't take into consideration the corporate documents that all parties agreed to and therefore did not deal with contractual property consents (citing a $20M sale that just occurred) and he said he didn't care.

64. I have made countless attempts to connect to NYS Supreme Court administrative judges for help with the Bias of Judge Cohen but received no assistance. In my first attempt, Judge Kaplan took my inquiry and sent it to the whole case which only caused more bias and prejudice against me. I have made Civil Rights claims to DOJ. I also made a complaint with NYS Legal Judicial Council.

65. As a take away from the last hearing, Judge Cohen would not demand GAIC to fund legal for me, even though they wrote a letter to Court, stating they wanted to but then changed their view and will not do so without a Court Order. I had an ex parte Motion on the agenda for the day and he did not allow time to provide an oral argument on the issue.

66. The only positive was that Judge Cohen realized that an evidentiary finally necessary but also acknowledges that it will take months and I need counsel. Given that he refused to review the property transfers as a result of his Orders and that they are still conveying property in real time, that is a serious concern that needs immediate relief by a Court. It also appears that the trial is positioned to focus narrowly on Oak and Chassen claims of

Cause on me rather than investigating the overall issues initially raised by me in the initial Complaint. Seems like too many different ideas

67. Any lawyers sufficiently staffed for this case require funding upfront of retainers of 250k to 750k to appear in this case with the history and the mess that was created by Judge Cohen meddling with contracts and changing them.

**68.** The insurance carrier writes a letter to the Court suggesting that they will fund a $250,000 allocation to me to cover myself for the hearing. Judge Cohen essentially tells them they don't have to and they pulled back! THIS TOO IN UNCONSCIABLE. They have a contractual obligation and NYS insurance law obligations.

69. As of December 5th, 2024, much dialogue occurs between counsel and the dispute regarding the active JJ Magistrate court appeal which is on the verge lapsing and there is no counsel willing to continue, who had an obligation to do so and no new bankruptcy attorney will jump in quick enough to meet deadlines. The fireworks happen daily and have severe consequences on my well-being and Civil Rights per the 14th Amendment.

70. I wrote countless letters in December to the Courts begging for relief. Judge Cohen agrees to allow for limited discovery and live testimony. I immediately thanked the Court and illustrated what I proposed to defend myself. Judge Cohen stamped the letter with no objection and said that the parties could object "timely"

71. Robert Lorenc decided to help me in December 2024, on a limited basis. He is immediately challenged by Schwartz on the scope of the upcoming hearing, which was initially scheduled for January 14th, 2025 as Chassen demands his Motion 17 is an emergency and it is the furthest thing from the truth.

72. Lorenc and I spend significant time preparing. I push on Lorenc to write to the Court to make sure that they are aware that Oak and Chassen are trying to change the narrative of

the hearing and trying to avoid telling the truth and providing discovery once again.    This is where the break down occurs.  It's not because I cannot keep lawyers, it is because this horrific situation has no merit, enforcement or practicality in any sense.

73. Just last monthweek Lorenc and I have an ex parte communication with Judge Cohen, he shares how important this hearing is and that I can lose control of JJ Arch.  He does not get into the case details but does not allow Mr. Lorenc out and says he was not give a stay and that since he is presented with an "Emergency" he must take that seriously.   We have evidenced that the emergency is that these folks are collusively attacking me, my family, my civil rights etc, nothing to do with the JJ Arch properties.

74. Several Chassen settlement proposals are discussed attached with blackmail and threats.

75. Last month I was attacked in a deposition for 8 hours by various lawyers via intimidation techniques.

76. The Insurance carrier is watching from the sidelines and refuses to help other than to mediate if the opportunity presents itself.

77. Last month, I learned that chassen put LP's on two of the JJ properties without noticing me whatsoever and trying to hold up sales contrary to a court order.

78. Again, Chassen's lawyers were pushing to  work with Lorenc on a settlement that I will no longer agree to, given the further damage that has been caused to me and future damage that will likely result from it but notably it included circumventing Oak which was curious to say the least.

79. No material discovery has been issued or provided, again.

80. The last month have been plagued with terrible litigation and Cohen being extremely biased and the result trying to incarcerate me and take whatever is left from me.

I respectfully request that the court consideration and assistance as I will be removing the various cases to the SDNY to approach and ensure that due process is properly upheld by allowing the "constitutional court" to review these ongoing concerns without bias

/s/    Jeffrey Simpson

**Related Cases**

---------------------------------------------------------------------------------------------------------

Derivative Active Cases below:

1. L&W Supply Corporation v. Arch Builders New York LLC & Jeffrey Simpson NYS Case 650671/2024, Judge assigned Lyle Frank

    Status: This is a case where Oak was to defend for AREH and Affiliates (per the Nov 2nd 2023 NYS Court Order) and chose not to. <u>I was named personally, even though I did not sign this obligation in a personal capacity. I engaged Offit Kurman for Counsel and they walked away when the insurance proceeds halted. If I did not bring on emergency counsel last week, I would have faced a personal judgement on 12.23.23 of $500,000 improperly. Now there is approximately 30 days to revisit the situation.</u>

2. White Cap L.P. v. Arch Builders LLC et al (including Jeffrey Simpson personally). January 24th, 2024

    NYS Case No: 150701/2024

    Status: Unknown

3. 435 Central Condo Development Holdings LLC et al v Midtown Oaks JV Holdings LLC et all (including Jeffrey Simpson personally), May 3rd, 2024.

    NYS Case No: 652392/2024

    Status: AREH Defendant (not controlled by me currently and they intentionally and improperly carved me out of their defense initiatives) appears to be seeking reassignment to Judge Cohen and possibly consolidating into main case above (158055/2023).

4. 146 89 Street Funding LLC v. 146 E 89 Borrower 1 LLC et all (including Jeffrey Simpson personally), January 11, 2024

NYS Case No: 850010/2024, assigned Judge Francis A. Kahn III Status:

NYS foreclosure of Real Property in Process <u>Inactive cases below:</u>

1. 608941NJ Inc. v Je rey Simpson, August 10th, 2023

   SDNY Case No: 1:23-cv-07089

   Status: Unverified but seems inactive since February 2024.

   Note: There has been perception created that I initiated litigation but this action did.  Oak watched Chassen's case in NYS unfold (initiated by me in defense to regain control of my company).   After he failed (they funded it too), they became a Movant in NYS action while keeping this case alive simultaneously to presumably keep their options open.

2. 608941 NJ Inc. v Je rey Simpson et al Declaratory Judgement precluding bankruptcy, October 11, 2023

   NYS Index No. 654963/2023

   SDNY Case No. 1:23-cv-8966

   Status: After this seperate NYS case removal to SDNY on October 11, 2023, TRO was issued, followed by conference on October 27th, 2023 with ex Parte Judge Andrew Carter.   Plainti withdrew the case immediately after it was not going favorable and SDNY was encouraging settlement.