UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

JEFFREY SIMPSON, *et. al.*,                                :
                                                           :
                       Plaintiff,                          :
                                                           :
          - against -                                      :
                                                           :
 JARED CHASSEN *et. al.*,                                   :       Case No.: 1:25-cv-04004 (JAV)
                                                           :
                       Defendants                          :
                                                           :
                                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**ARCH REAL ESTATE HOLDINGS LLC AND 608941 NJ INC.'s JOINDER AND
MEMORANDUM OF LAW IN OPPOSITION TO MOTION SEEKING RELIEF
FROM ANTI-REMOVAL INJUNCTION**

13231377-1

Table of Contents

Page

INTRODUCTION ................................................................................................................1

SUPPLEMENT....................................................................................................................1

    A.       Removal and Remand in Connection with the JJ Arch Bankruptcy Case...............1

    B.       Subsequent Removals and Remand and the State Court Activity ..........................9

    C.       Argument ...............................................................................................................10

CONCLUSION...................................................................................................................11

WORD-COUNT CERTIFICATION ..................................................................................13

13231377-1

<u>Table of Authorities</u>

<u>Page</u>

CASES

*In re JJ Arch LLC*, 663 B.R. 258 (Bankr. S.D.N.Y. 2024), *motion for relief from judgment denied sub nom. In re JJ Arch LLC*, No. 24-10381 (JPM), 2025 WL 3465625 (Bankr. S.D.N.Y. Dec. 2, 2025)...................................................................2, 6, 7, 8

STATUTES

11 U.S.C. § 362(a) .........................................................................................................................5

28 U.S.C. § 157(c)(1)......................................................................................................................3

28 U.S.C. § 1334(b) .......................................................................................................................2

28 U.S.C. § 1334(c)(2).....................................................................................................................3

OTHER AUTHORITIES

Fed. R. Bankr. P. 9033(b) ..............................................................................................................5

13231377-1

**INTRODUCTION**

The issue before the Court is not just about a single improper removal; instead, it concerns a documented pattern of improperly using removal and bankruptcy to delay adjudication and to extract leverage. Only by maintaining and enforcing the existing injunction can this Court prevent the next chapter of waste and abuse waiting to be caused by Jeffrey Simpson ("Simpson"). For that reason, Arch Real Estate Holdings LLC ("AREH") and 608941 NJ Inc.'s ("Oak" and together with AREH, the "Joinder Parties") fully join (the "Joinder") in the April 20, 2026 *Opposition of Jared Chassen to the Motion of Jeffrey Simpson dated March 12* [ECF Nos. 70-72] *Seeking Relief from Anti-Removal Injunction* (the "Opposition") filed contemporaneously herewith [ECF Nos. 77-78].

The Joinder Parties further supplement the Opposition to provide additional facts demonstrating Simpson's abuse of process and the resulting waste of party and judicial resources. In particular, Simpson's initial removal of this action, acting in control of JJ Arch LLC ("JJ Arch") and in violation of court orders, delayed the State Court Action for the better part of 2024, and Simpson then exploited that delay and the related costs in a vexatious attempt to leverage concessions from Oak, AREH, and Chassen. The very purpose of the injunction is to prevent Simpson from exploiting the court system in that way again.

**SUPPLEMENT**

A.     **Removal and Remand in Connection with the JJ Arch Bankruptcy Case**

The Joinder Parties are each a party to the State Court Action, as is Simpson, JJ Arch, and Jared Chassen ("Chassen"). In November 2023, the State Court entered a series of interim orders concerning the governance rights of JJ Arch and AREH (the "Interim Orders"). The crux of these orders provided that: (i) Oak would act as the sole managing member of AREH; (ii) August 2023 purported resignation instruments of both Chassen and Simpson were "void and of no force or

13231377-1

effect"; (iii) either Simpson or Chassen could unilaterally consent to a Major Decision of AREH; and (iv) any "Company Major Decision" under JJ Arch's operating agreement required the prior written consent of Chassen. *In re JJ Arch LLC*, 663 B.R. 258, 265 (Bankr. S.D.N.Y. 2024), *motion for relief from judgment denied sub nom. In re JJ Arch LLC*, No. 24-10381 (JPM), 2025 WL 3465625 (Bankr. S.D.N.Y. Dec. 2, 2025). A "Company Major Decision" included JJ Arch's filing of a bankruptcy petition. *See* JJ Arch Amended Operating Agreement, Adv. Pro.[1] ECF No. 3-2, ¶ 3.2. The Interim Orders remain in effect.

On March 7, 2024, while the State Court's orders concerning the governance of JJ Arch and AREH were in effect, Simpson unilaterally filed a voluntary chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Southern District of New York on behalf of JJ Arch. *See generally*, *In re JJ Arch LLC*, No. 24-10381 (JPM). Simpson did not obtain Chassen's permission as mandated by the State Court. The automatic stay of the State Court Action upon JJ Arch's bankruptcy filing prevented any party from immediately returning to the State Court for enforcement of the violated interim orders.

Simpson caused JJ Arch to remove the State Court Action to the District Court on April 1, 2024, which was referred to the Bankruptcy Court on April 3, 2024, where the State Court Action was assigned Adversary Proceeding Number 24-01335 (JPM).

On April 10, 2024, Chassen and AREH jointly moved (the "Remand Motion") to remand the State Court Action. Adv. Pro. ECF No. 2. Chassen and AREH argued that the Bankruptcy Court had no subject matter jurisdiction over the State Court Action, or alternatively, its subject matter jurisdiction was at most, "related to" unexclusive jurisdiction under 28 U.S.C. § 1334(b). Remand Motion at 7-15. Chassen and AREH further argued that mandatory abstention was

---

[1] References to "Adv. Pro." refer to the docket of the State Court Action for the period in which it was removed to the Bankruptcy Court for the Southern District of New York under Adversary Proceeding Number 24-01335 (JPM).

warranted under 28 U.S.C. § 1334(c)(2). *Id.* at 15-18. Alternatively, Chassen and AREH argued that permissive abstention or equitable remand was warranted. *Id.* at 19-26.

On April 12, 2024, Chassen and AREH filed papers in the removed State Court Action exercising their rights to withhold consent to entry of final orders or judgments by the Bankruptcy Court in that action. Adv. Pro. ECF Nos. 8, 9. Absent this consent, to the extent the State Court Action was not a core matter, the limitations upon the Bankruptcy Court's powers were similar to that of a Magistrate absent full party consent and the Bankruptcy Court could only issue proposed final orders or judgments, subject to any objections to be considered by the District Court. *See* 28 U.S.C. § 157(c)(1).

On June 10, 2024, the Bankruptcy Court issued a 36-page opinion finding remand of the State Court Action was warranted on several alternative grounds (the "Remand Findings"). *Memorandum Opinion and Order, and Findings of Fact and Conclusions of Law*, Adv. Pro. ECF No. 26, *also available at In re JJ Arch LLC.*, No. 24-10381 (JPM), 2024 WL 2933427 (Bankr. S.D.N.Y. June 10, 2024). The Bankruptcy Court devoted the first two thirds to procedural history, discussion of mandatory abstention, and a reasoned analysis of the Bankruptcy Court's subject matter jurisdiction.

On these points, the Bankruptcy Court concluded that the State Court Action—the very State Court Action which Simpson now once again seeks this Court's leave to remove —***was not core*** and that it only had "related to" jurisdiction. As such, mandatory abstention of the State Court Action was warranted. Remand Findings at 23. *See also* 28 U.S.C. § 1334(c)(2) (mandatory removal statute).

The Bankruptcy Court found further that permissive abstention or equitable remand "are also appropriate." *Id.* Following a twelve factor test courts consider on permissive abstention –

and setting aside "factor ten" – the Bankruptcy Court conducted an analysis and determined that the remaining eleven factors, to the extent applicable, "independently" warranted permissive abstention. *Id.* at 27 (emphasis added).

Factor ten is "the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties." *Id.* at 24. It was here (*Id.* at 27-35) where the Bankruptcy Court engaged in an in-depth discussion of Simpson's forum shopping behavior. That discussion addressed how "Mr. Simpson made three attempts to nullify Justice Cohen's rulings in the months preceding this bankruptcy" (*Id.* at 30) and how Simpson's various bankruptcy filings took positions concerning Chassen's resignation that were inconsistent with each other and with the Interim Orders issued by the State Court. *Id.* at 33-35. The Bankruptcy Court further cited this email Simpson sent to Oak one day prior to the Petition Date:

> YOU DON'T KNOW ANYTHING, GO BACK TO CANADA
> AS YOU ARE PLANNING TO DO ANYWAY AFTER YOU
> ARE FINISHED RUINING THE BUSINESS THAT I BUILT.
> THE GROWN UPS WILL HANDLE IT. YOU WILL NEVER BE
> ALLOWED BACK IN THE US WHEN WE ARE DONE WITH
> THIS NONSENSE. DON'T SEND ME ANYTHING MORE,
> YOU WILL BE PROVEN GUILTY ON ALL RESPECTS –
> GOOD THAT YOU DUPED ONE JUDGE, YOU WON'T DUPE
> OTHERS

(the "Duping Judges Email") *Id.* at 39. The Court noted that "[i]t is well-established that 'state-court losers complaining of injuries caused by state-court judgments' cannot use the federal judiciary as an appellate court" (*Id.* at 30 (citations omitted)), and found that the forum shopping factor "weighs in favor of abstention." *Id.* at 35.

Following the Bankruptcy Court's proposed Remand Findings, Simpson, on behalf of JJ Arch, filed an objection to the District Court on June 24, 2024. Adv. Pro. ECF No. 31 (the "Remand Objection"). The Remand Objection was not a serious pleading. Facially, it was a litigation tactic to stall for time, as nowhere did it comply with the obligation to "identify each

4

proposed finding or conclusion objected to and state the grounds for objecting." Fed. R. Bankr. P. 9033(b). His tactic worked: the State Court Action remained stayed for months while the June 2024 Remand Objection was still pending before the District Court. Finally, in October 2024, the Bankruptcy Court dismissed JJ Arch's underlying bankruptcy case as, *inter alia*, a bad faith filing motivated by Simpson's effort to forum shop away from the State Court. Thereafter, the District Court, Failla, J., dismissed the Remand Objection as moot on November 19, 2024. Adv. Pro. ECF No. 53.

Notably, on the same day that the Bankruptcy Court entered its Remand Findings, it granted AREH and Chassen's motions seeking to confirm that the automatic stay of 11 U.S.C. § 362(a) did not apply to the State Court Action or alternatively, seeking relief from the automatic stay so that the action could proceed. June 10, 2024 Order, Adv. Pro. ECF. No. 132. However, the Bankruptcy Court's order was "conditional upon the District Court's ruling on this Court's Remand Ruling," *Id.* at 21. Thus, the automatic stay of the State Court Action remained in effect until JJ Arch's chapter 11 case itself was dismissed.

The practical effect of the delay was that no party could return to the State Court for enforcement of the very orders that were meant to prevent the chapter 11 filing in the first place. Simpson's bad faith chapter 11 filing resulted in a series of events that were both costly and detrimental to the parties, including:

- Parties continued months of motion practice, including AREH and Chassen's motion to dismiss the bankruptcy case;

- Simpson caused JJ Arch to press its position taken in the bankruptcy case (and signaling the same to AREH's counterparties) that AREH could not enter into transactions that would amount to a "Major Decisions" absent Bankruptcy Court

5

approval, forcing AREH to adjust its business negotiations and to file an October motion for relief with the Bankruptcy Court so it could proceed with a transaction;[2]

- Simpson caused JJ Arch to promulgate a chapter 11 plan premised upon the illegal transfer of assets to JJ Arch's bankruptcy estate, the control of which is the subject of the State Court Action, and which plan was filed as a litigation position in opposing dismissal; and

- Simpson caused JJ Arch to file of a letter motion seeking mandatory mediation in order to further leverage Simpson's position in control of the debtor in possession, even though he had no authority to file the bankruptcy case in the first instance, arguing that "the Court has ample authority to compel the parties to participate in mediation [and that].... The Debtor and its counsel strongly believe in the positive benefits that mediation can achieve and urges the Court to use its authority to bring the parties together in an attempt to stop endless litigation, harm and diminution and reach a consensual understanding that benefits all parties." *In re JJ Arch*, No. 24-10381 (JPM) ECF No. 203 at 2.

---

[2] "As a final matter, the Court notes that yesterday, on October 10, 2024, AREH filed a Motion in Aid of Existing State Court Order Deeming the Debtor to Have Authorized the Haverhill Sellers to Consummate the Melrose Transaction. [See generally Adv. Pro. Dkt., Doc. 40]; see also id. at p. 7id. at p. 7 ("Mr. Simpson has (contrary to the Debtor's previous proposed counsel's own representations to this Court) taken the position that no Major Decision can be made absent his consent notwithstanding the Existing [Interim Orders] ...."); id. at p. 16 id. at p. 16 ("By this Motion, AREH requests entry of an order in aid of Existing [Interim Orders] affirming that the Debtor has consented to [a pending transaction] by virtue of Mr. Chassen's approval, or, alternatively, by virtue of Mr. Simpson's failure to object.")." *JJ Arch*, 663 B.R. at 274 n.27.

If called upon, AREH can demonstrate that the JJ Arch chapter 11 filing caused three AREH-controlled properties to be foreclosed on because the governance cloud created by the bankruptcy case and removal, making it impossible to title insure any sale or lender hope note transactions.

6

13231377-1

Thereafter, in dismissing JJ Arch's bankruptcy case, the Bankruptcy Court discussed Simpson's bad faith, noting that "the record overwhelmingly suggests that this bankruptcy was a means of removing the State Court Proceeding from the purview of Justice Cohen. This is indicated by Mr. Simpson's three unsuccessful attempts to nullify the Interim Order (particularly the AREH Interim Order) in the months leading up to the filing of the petition." *JJ Arch*, 663 B.R. at 282. The Bankruptcy Court also referred to the Duping Judges Email (quoted above). *Id.* at 282-83.

Then after citing five separate items in the record supporting the conclusion (*Id.* at 283), the Bankruptcy Court found:

> In short, the circumstances of this case establish that the Debtor's Petition was not filed in order to "rehabilitat[e] or liquidat[e] to a good-faith debtor," [  ] and was instead an attempt by Mr. Simpson to avoid the resolution of the governance issues raised in the State Court Proceeding—a proceeding initiated by Mr. Simpson. The record thus supports the conclusions that this bankruptcy was filed without a "good faith intent to reorganize . . . ."

*Id.* at 284 (internal marks and citations omitted).

The Bankruptcy Court further found that "[t]he relevant parties that have participated in this case—even Mr. Simpson, prior to this bankruptcy—have apparently understood the Interim Orders to prohibit the filing of a bankruptcy petition on behalf of the Debtor pending either: (i) a successful appeal of those Orders: or (ii) the final resolution of the State Court Proceeding." (citing support).

> Regardless of whether this understanding of the Interim Orders is accurate, the posture of the State Court Proceeding was such Mr. Simpson either knew or should have known that, from the first, every unilateral act he took on behalf of the Debtor would be challenged by the State Court Litigants as unauthorized. ***Because every reorganization requires an authorized petition, and because an unauthorized petition renders a case "subject to dismissal . . . no reasonable person would have believed***

7

> *reorganization was possible under these facts (and it appears that
> no reasonable person did)*.

*Id.* at 285. (internal marks omitted) (emphasis added).

The Bankruptcy Court ordered dismissal of the case and removed the related adversary

proceedings. *Id.* at 291.

And the Bankruptcy Court wrote in detail concerning the reorganization plan having been

reliant upon the dubious transfer of assets:

> However, the propriety of these transfers—much like the propriety of the Plan—
> depends entirely upon whether Mr. Simpson possesses the legal right to direct the
> subsidiaries controlled by the Debtor. On March 7, 2024 (the petition date) it was
> far from clear whether Mr. Simpson possessed this authority, as multiple parties
> (including Mr. Simpson) had spent seven months in state court litigating Mr.
> Simpson's continued membership in the Debtor. [See Remand Order, Doc. 131, p.
> 28] ("Mr. Simpson's state court complaint [filed in August of 2023] made several
> requests for relief, most (if not all) of which required a determination of the
> membership rights of Mr. Simpson and Mr. Chassen vis-à-vis the Debtor."); [see
> also Dismissal Reply, Doc. 188, pp. 5–6]; [Adv. Pro. Dkt., Doc. 4, p. 16]; [First
> Motion to Dismiss, Doc. 4, p. 4]. Seven months into this bankruptcy, it is still
> unclear whether Mr. Simpson possesses this authority. [See TRO Letter, Doc.
> 199] (asserting that the transfers contemplated by the Plan amount to "(1)
> breaches [of] Mr. Simpson's fiduciary duties to the various members of the[ ]
> [Portfolio Entities]; (2) [ ] fraudulent conveyance[s] under the New York's
> Uniform Voidable Transaction Act and (3) violat[ions] [of] the terms of the [Non-
> AREH Entities'] relevant Operating Agreements"); [Dismissal Reply, Doc. 188,
> p. 3] ("[T]he [P]lan relies upon the illegal transfer of interests of non-debtor
> subsidiaries to the Debtor and assets from subsidiaries for which the Debtor at this
> late hour has still not provided the information required by Bankruptcy Rule
> 2015.3.").
>
> In summary, the Plan and the transfers it contemplates rest upon assumptions that:
> (i) were disputed by various parties throughout the course of the State Court
> Proceeding; and (ii) have thereafter been disputed before this Court from the
> outset of this case. Accordingly, any plan proposed solely at the direction of Mr.
> Simpson could not satisfy Sections 1129(a)(3) and 1129(a)(16) until the Debtor's
> governance—an issue first raised in, and central to, the State Court Proceeding—
> is determined.

*JJ Arch* 663 B.R. at 287–88.

8

B.        **Subsequent Removals and Remand and the State Court Activity**

The Opposition sets forth in detail Simpson's 2025 removals of the State Court Action

and are fully incorporated by reference. On June 4, 2025, AREH did join in Chassen's Motion

seeking sanctions relief leading to Judge Furman's injunction, noting:

> In addition to the abuses discussed at length in the MOL,
> these removals have added time and expense to the litigation. It
> took over half a year and significant motion practice on both
> AREH's and Mr. Chassen's part to obtain the bad faith dismissal
> of the bankruptcy case together with the first remand of this case.
> *See generally In re JJ Arch LLC*, Bankr. S.D.N.Y. No. 24-10381
> (JPM).[3] Then, in connection with the March 2025 removal, AREH
> prepared and filed a joinder to Mr. Chassen's remand motion and
> prepared, served, and following the 21 day safe-harbor, on April
> 24, 2025, filed, a Rule 11 motion against Mr. Simpson and his then
> counsel, Robert Lorenc of the Lorenc Law Firm. S.D.N.Y. No. 25-
> cv-02372 (LTS) [Dkt Nos. 16-17, 28-30]. The District Court,
> Swain, C.J., denied all motions as moot, however, the next day
> when the Court entered an order dismissing the case for Mr.
> Simpson's non-payment of the fee. *Id.* [Dkt. No. 34].

ECF No. 24.

AREH and Oak are both parties to the State Court Proceeding. AREH's governance is

dependent on the outcome of the State Court Action, with potential future challenges as to its

corporate decision making. Oak likewise has asserted nine different causes of action concerning

Simpson's mismanagement, extortion, and misappropriation of millions of dollars of Oak's

investment in AREH, seeking both damages and equitable relief. NYSCEF No. 319.[4]

---

[3] Four months prior to entering his dismissal order, Judge Mastando issued proposed findings of fact recommending remand to the District Court without having addressed dismissal of the bankruptcy case. *Memorandum Opinion and Order and Findings of Fact and Conclusions of Law* dated June 10, 2024 *In re JJ Arch LLC*, Bankr. S.D.N.Y. No. 24-10391 (JPM) [Dkt. No. 131], JJ Arch objected to the proposed findings and on November 19, 2024, the District Court, dismissed those objections as moot once the case was remanded as part of the dismissal. *Id.* Endorsed Memorandum dated November 20, 2024 [Dkt. No. 226].

[4] Documents from the State Court Action are cited the New York State Court Electronic Filing system ("NYSCEF") by reference to the NYSCEF docket number in the State Court Action.

13231377-1

Not surprisingly, Simpson's improper tactics in the wake of the first remand have prejudiced Oak's ability to fully pursue relief on its claims. Among other things, Simpson refused to provide any discovery at all, let alone responses to any discovery request, or to appear for any deposition. *See* NYSCEF No. 2231, ¶¶ 3-9, 15-34. Prior to Simpson's latest bankruptcy filing, after months of discovery disputes, court conferences, and significant motion practice, Oak finally stood on the precipice of obtaining a judgment and relief. As of February 27, 2026, Oak had filed two motions to dismiss Simpson's and JJ Arch's counterclaims and a motion to strike Simpson's and JJ Arch's pleadings, due to their willful and contumacious failure to comply with court order and refusal to participate in discovery. *See* NYSCEF Nos. 2083-2087, 2088-2093, 2230-2255, 2343.[5] All three motions had been fully submitted without any opposition.

C.      **Argument**

It is readily apparent Simpson intends to misuse the removal process in order to wipe the proverbial slate clean on his misconduct and start the cases against him from scratch. If the Court grants Simpson's motion, Oak's claims shall remain unresolved after two years of fits and starts, appearances through detours over Simpson's erratic record of non-cooperation in the process, and a record of Simpson's default in defending the action. AREH too as a party must continue to devote resources and remains exposed concerning the lack of finality over its corporate

---

[5] Due to Simpson's improper removals, Oak has had to file its motions to dismiss three times. In February 2024, Oak filed motions to dismiss the Counterclaims. *See* NYSCEF 610, 616. Neither Simpson nor JJ Arch filed any opposition to the motions to dismiss. The motions to dismiss were fully submitted in March 2024. After the submission of the motions to dismiss, Simpson removed the case to federal court. *See* NYSCEF 635. On June 10, 2024, the Court denied the motions to dismiss without prejudice, subject to refiling if the case was remanded. *See* NYSCEF 639. On March 21, 2025, Oak renewed its motions to dismiss the Counterclaims. *See* NYSCEF 1390, 1395. Again, neither Simpson nor JJ Arch filed any opposition to the motions to dismiss. Instead, Simpson again removed the case to federal court. NYSCEF 1402. On June 12, 2025, the Court denied the motions without prejudice due to the removal and granted leave to refile. NYSCEF 1563.

13231377-1

governance and potential steps Simpson may yet again take to undermine AREH's ability to operate.

Judge Furman found each of the prior removals of this very State Court Action, including the bankruptcy removal, to have been frivolously caused by Simpson. Judge Furman ordered the injunction for a reason: each of Simpson's prior removals resulted in not only delay and inefficiency, but also were costly to Simpson's counterparties because of the havoc that Simpson has wreaked for years. And nowhere was this havoc more prevalent than where Simpson, through JJ Arch, used the very existence of a bankruptcy case as a sword to, *inter alia*, to avoid compliance with the existing Interim Orders, prevent AREH from operating, promulgate a plan premised on illegal transfers of assets as a defense to dismissal, force wasteful motion practice, and to leverage his ill-gotten advantages to a forced mediation.

Lifting the injunction now would eviscerate its purpose. It would reward Simpson for his persistent and frivolous disruptions of the litigation before Justice Cohen and force the parties down essentially the same drawn-out remand path they went down two years ago concerning the very same action that has already been determined to be subject to both mandatory and permissive abstention. It would be yet another waste of resources serving Simpson's delay tactics and invite opportunities for further havoc by affording Simpson leverage based on his serial abuse of process. The injunction is there to protect the parties from exactly these consequences.

## **CONCLUSION**

For the foregoing reasons and for the reasons set forth in the Opposition, the Court should deny the motion.

11

13231377-1

Dated: April 20, 2026

**OLSHAN FROME WOLOSKY LLP**

/s/ Jonathan T. Koevary
Jonathan T. Koevary
1325 Avenue of the Americas
New York, NY 10019
212.452.2300
jkoevary@olshanlaw.com
*Counsel for Arch Real Estate Holdings LLC*

-and-

**BINDER & SCHWARTZ LLP**

/s/ Eric B. Fisher
Eric B. Fisher
Lindsay A. Bush
675 Third Avenue, 26th Floor
New York, New York 10017
Tel: (212) 510-7008
efisher@binderschwartz.com
lbush@binderschwartz.com
*Counsel for 608941 NJ Inc.*

-and-

**MEISTER SEELIG & SCHUSTER PLLC**

*/s/* David A. Gold
Stephen B. Meister
David A. Gold
125 Park Avenue, 7th Floor
New York, New York 10017
Tel: (212) 655-3500
*Counsel for 608941 NJ Inc.*

12

13231377-1

## **WORD-COUNT CERTIFICATION**

I, Jonathan T. Koevary, Esq., certify that the foregoing Memorandum of Law contains less than 8750 words, as counted by Microsoft Word's word-processing system, excluding the caption, table of contents, table of authorities and signature block, and that it complies with the applicable word limits.

/s/ Jonathan T. Koevary
Jonathan Koevary

13

13231377-1